John KIMBROUGH et al., Plaintiffs,

v.

William WILSON et al., Defendants.

No. 74–706C(2).

United States District Court,
E. D. Missouri, E. D.

July 28, 1977.

Elbert Dorsey, Charles L. Bussey, Jr., Bussey, Collier, Dorsey & Hardge, P. C., St. Louis, Mo., for plaintiffs.

Jack L. Koehr, City Counselor by Charles W. Kunderer, Asst. City Counselor, St. Louis, Mo., for defendants.

## MEMORANDUM

REGAN, District Judge.

Plaintiffs, black employees in the classified service (civil service system) of the City of St. Louis in the Street Department, brought this action pursuant to Section 1983, 42 U.S.C., on behalf of themselves and all other black employees in the Street Department.

Defendants are William Wilson, the Director of Streets, who is the head of the Street Department which is responsible for the operations and maintenance of the public streets in the City; Thomas Heugele, the head of the street division (one of the three sections of the Street Department); and Elliott R. Scearce, the Director of Personnel for the City, whose department is responsible for advertising, interviewing and testing for potential employees and for promotions of employees of the City.

The thrust of the complaint is that defendants maintain a policy, practice and custom of discriminating against plaintiffs and their class because of race with respect to compensation and terms, conditions and privileges of employment, and limiting, segregating and classifying Street Department employees so as to deprive plaintiffs and their class of equal employment opportunity and otherwise adversely affect their status as employees because of race and color.

Specifically, plaintiffs allege that defendants have maintained the policy, practice and custom (1) of rating minority employees in the Street Department at an inadequate level, thereby depriving such employees of the annual increase in salary to which they would otherwise be entitled, (2) of disciplining minority workers for infractions of rules in situations in which non-minority workers are not disciplined, and (3) of promoting non-minority workers ahead

of minority workers with more seniority and better qualifications for the job. The credible evidence does not support any of these allegations.

As for the annual ratings, the record is clear that all employees, black and white, are rated in the same manner. Most of the named plaintiffs either were admittedly rated "Good" or failed to testify as to their ratings. There is no evidence of any improper policy or practice as to rating minority employees.

█ As for the imposition of discipline, plaintiffs' claim involves several isolated incidents, none of which demonstrate the existence of a discriminatory policy: (1) Two black employees, one a foreman, who were involved in a "fight" were disciplined by short suspensions (one day for the foreman and three or five days for the other man). The foreman struck the first blow, and his adversary responded by wielding a shovel upon the body of the foreman, breaking the shovel and causing bloodshed. As we view the record, this was a very serious altercation. Plaintiffs' claim of unequal treatment, which we reject, is based upon testimony that about four or five years earlier two white men who engaged in a fist fight were not given "time off." The fights were entirely dissimilar and did not require identical discipline. (2) A black employee was given a one-day suspension for *intentionally* raising the bed of his truck to "try it out," without regard to the fact that there was inadequate overhead clearance, the result being that the truck became wedged under the roof of the storage facility. A white employee was not disciplined when the bed of his truck raised "automatically" when the vehicle was placed in gear and damage resulted. Another white driver who accidentally caused minor damage of $14.25 to a street sweeper he was operating was given a reprimand, but no suspension. Again, the incidents are dissimilar, one involving an intentional act and the others unintentional ones. (3) Other isolated incidents of discipline to black employees were adverted to in the testimony; e. g., for missing or being late for a "snow call," and leaving work without authorization during a flood. However, there is no substantial credible evidence that white employees were treated differently for the same or similar conduct.

█ We turn next to plaintiffs' claims of discrimination relating to promotions and job classifications of employees in the Street Department. In our judgment, there is no substantial evidence supportive of these claims. Plaintiffs rely on speculation and surmise. For example, there is testimony by one of the plaintiffs that he applied for the position of ironworker, but was not permitted to take the test on the ground he lacked experience doing the kind of work that specific job required. The evidence does not substantiate his contention that he was "qualified." There is also testimony that a white employee was assigned to a crew as a "raker," but after the black "raker" in the crew refused to show him how to perform the job, the former Street Commissioner removed the white employee from the crew with the statement that he had a "better" job for the employee.

The black "raker" testified that prior to being promoted from the laborer to the "semi-skilled" classification, he had performed some raking (semi-skilled) work without receiving additional compensation. Another black plaintiff testified by way of conclusion that he had done some semi-skilled work before his promotion to the semi-skilled classification. There is also some testimony that some notices of job vacancies were posted after the expiration date for such jobs. We do not credit this testimony. In addition, there is an entire absence of proof of discriminatory intent.

█ Plaintiffs also complain of the tests administered by the Department of Personnel for the various positions in the Street Department. Not only does the vague and conclusory testimony respecting the tests fail to show either discriminatory purpose or effect, but there is an entire want of any evidence that blacks "fared worse" than whites in any of the tests.

The remaining contentions of plaintiffs pertain to the assignment of personnel and

equipment. Under the credible evidence, we find that the assignment of work crews, personnel and equipment are not made on the basis of race and that work teams are not racially segregated.

Section 1983, 42 U.S.C. provides for liability on the part of any person who, under color of law, custom or usage subjects or causes to be subjected any person to the deprivation of any rights, privileges or immunities secured by the Constitution and laws. Under the facts as we have found them, defendants did not deprive plaintiffs or the members of their class of any right, privilege or immunity secured by the Constitution and laws. It follows that judgment should be entered in favor of defendants.

The foregoing memorandum constitutes our findings of fact and conclusions of law.